UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:21-cv-00134-RJC

| | |
|---|---|
| ERNEST EDWARDS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>COMMISSIONER OF SOCIAL SECURITY, )<br>)<br>Defendant. )<br>)<br>) | **ORDER** |

**THIS MATTER** comes before the Court on the Parties' Cross Motions for Summary Judgment. (DEs 12, 15). Having fully considered the written arguments, administrative record, and applicable authority, the Court finds that Defendant's decision to deny Plaintiff Social Security benefits is proper and affirms the decision. Accordingly, the Court grants Defendant's Motion for Summary Judgment.

## I. BACKGROUND

Plaintiff Ernest Edwards ("Mr. Edwards") seeks judicial review of the Commissioner of Social Security's ("Defendant" or "Commissioner") denial of his social security claims. Mr. Edwards filed applications for disability insurance benefits under Title II and for supplemental security income under Title XVI on November 9, 2018. (Tr. [1] 15). In both applications, the alleged onset date was September 11, 2018. (*Id.*).

In denying Mr. Edwards' social security claim, the ALJ conducted a five-step sequential evaluation. (*Id.* at 15–26). At step one, the ALJ found that Mr. Edwards had not engaged in

---

[1] Citations to "Tr." throughout the order refer to the administrative record located at DE 10.

1

Case 1:21-cv-00134-RJC   Document 21   Filed 08/12/22   Page 1 of 11

substantial gainful activity since the alleged onset date. (*Id*. at 17). At step two, the ALJ found that Mr. Edwards had the following combination of severe impairments: multiple fractures from a motor vehicle accident, laceration of extensor tendon of the foot, obesity, posttraumatic stress disorder, and depressive disorder. (*Id*.). At step three, the ALJ found that none of the impairments, or combinations of impairments, met or equaled the severity of a listed impairment. (*Id*. at 18–19). Before moving to step four, the ALJ found that Mr. Edwards had the residual functional capacity ("RFC") to perform sedentary work as explained below:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he cannot climb ladders, ropes, or scaffolds, and he can perform other postural activity occasionally. The claimant should avoid concentrated exposure to hazards, vibrations, fumes, and other respiratory irritants. The claimant can perform simple, routine, repetitive work, with an SVP of 1 or 2, and reasoning of 1, 2, or 3. The claimant can have occasional contact with the public.

(*Id*. at 19). At step four, the ALJ found that Mr. Edwards could not perform any past relevant work but found at step five that Mr. Edwards could perform jobs that exist in significant numbers in the national economy, including as a cuff folder, label pinker, and sack repairer. (*Id*. at 25).

After exhausting his administrative remedies, Mr. Edwards brought the instant action for review of Defendant's decision denying his applications for disability benefits. (DE 1).

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (*per curiam*). The District Court does not review a final decision of the Commissioner *de novo*. *Smith v. Schweiker*, 795 F.2d

343, 345 (4th Cir. 1986); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)), the Fourth Circuit defined "substantial evidence" as:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*See also Seacrist v. Weinberger*, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence.").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. *Hays v. Sullivan*, 907 F.2d at 1456; *see also Smith v. Schweiker*, 795 F.2d at 345; *and Blalock v. Richardson*, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION OF CLAIM

Plaintiff raises two challenges: (1) the Agency's structure is unconstitutional and (2) the ALJ failed to evaluate whether Mr. Edwards needed an accommodation to elevate his foot. Neither challenge warrants remand or reversal.

#### A. Agency Structure

Plaintiff argues the Social Security Act unconstitutionally restricts the President's removal of the Commissioner, and due to the unconstitutional structure of the Social Security Administration, the authority vested in the ALJ by the Commissioner was unconstitutional. Thus, Plaintiff asks the Court to remand his case for a new hearing. Defendant agrees that 42 U.S.C. § 902(a)(3) violates the separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause. (DE 17 at 3–4). But Defendant contends a new hearing is not necessary because Plaintiff was not harmed by the unconstitutional statutory removal restriction. *See Collins v. Yellen*, 141 S. Ct. 1761, 1787-89 (2021).

The Supreme Court held in *Seila Law v. Consumer Financial Protection Bureau* that Congress cannot limit the President's power to remove the Director of the Consumer Financial Protection Bureau to instances of "inefficiency, neglect, or malfeasance." *Seila Law v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2197 (2020). It reached a similar conclusion the next term in *Collins v. Yellen*, concluding the Federal Housing Finance Agency's ("FHFA") structure unconstitutionally violated the separation of powers because the statute restricted the President's removal authority of the single Director "for cause." *Collins*, 141 S. Ct. at 1787. Here, Plaintiff argues, like in *Seila Law* and *Collins*, the Social Security Act violates the separation of powers because the statute restricts the President's ability to remove the Commissioner. 42 U.S.C. § 902(a)(3). ("An individual serving in the office of Commissioner may be removed from office only pursuant to a finding by the President of neglect of duty or malfeasance in office."). On July 8, 2021, the Justice Department's Office of Legal Counsel issued an opinion that the removal restriction for the Commissioner violates the separation of powers in light of *Seila* and *Collins* and concluded the President may remove the Commissioner at will, notwithstanding the statutory removal limitation. *The Constitutionality of the Commissioner of Social Security's Tenure*

*Protection*, 45 Op. O.L.C. ––––, slip op. (July 8, 2021).

However, in *Collins*, after the Supreme Court concluded the FHFA's structure was unconstitutional, it explained that because the Director who headed the FHFA was properly appointed there was "no reason to regard any of the actions taken by the FHFA . . . as void" and explained that plaintiffs are not entitled to retrospective relief without showing the unconstitutional provision "inflict[ed] compensable harm." *Collins*, 141 S. Ct. at 1787–89. In other words, "the unlawfulness of the removal provision does not strip the Director of the power to undertake the other responsibilities of his office" when he is properly appointed simply because of the unconstitutional restrictive removal provision; rather, for retroactive relief plaintiffs must show they were harmed by the unconstitutional provision. *Id.* at 1788 n.23. Applying these principles to the social security context, "a plaintiff must demonstrate some nexus between the removal protection and the injury [he] alleges in order to present a cognizable challenge to the constitutionality of the Social Security Commissioner's for-cause removal protection." *Satterthwaite v. Kijakazi*, No. 3:20-cv-724-MOC, 2022 WL 468946, at *3 (W.D.N.C. Feb. 15, 2022).

Here, Plaintiff convincingly argues the Social Security Act's restrictive removal provision is unconstitutional. However, the existence of the unconstitutional removal provision alone does not entitle Plaintiff to a new hearing. Plaintiff fails to show how he was harmed by the restrictive removal provision. Instead, his conclusory argument is that the unconstitutional removal provision regarding the Director infected all the ALJs and their decisions. In other words, the constitutional defect runs from the Commissioner to each ALJ because the Commissioner delegates authority to the ALJs. And that defect resulted in compensable harm. However, Plaintiff fails to cite any legal authority or otherwise show the Court how he was particularly harmed aside from making

conclusory statements that harmed should be presumed. (DE 14 at 14). This is insufficient to demonstrate direct harm. Because Plaintiff has not demonstrated a nexus between the statutory removal protection and his alleged injury, he is not entitled to a new hearing.[2]

Plaintiff also argues, in light of *Collins*, that harm occurred because President Biden publicly criticized Director Saul's performance and wished to terminate Director Saul immediately upon assuming office but waited until after the DOJ issued a memorandum confirming that the President could terminate the Social Security Director. In *Collins*, the Supreme Court noted that there could be harm regarding an unconstitutional removal restriction when a President "had attempted to remove a Director but was prevented from doing so by a lower court decision holding that he did not have 'cause' for removal" or if "the President had made a public statement expressing displeasure with actions taken by a Director and had asserted that he would remove the Director if the statute did not stand in the way." *Collins*, 141 S. Ct. at 1789. Here, no lower court enjoined President Biden from terminating Director Saul. And while President Biden was publicly critical of Director Saul, Plaintiff does not show that the President asserted that but for the statute he would have removed Director Saul. Accordingly, Plaintiff cannot show the necessary harm based on President Biden's actions.

In addition to the separation of powers argument, Plaintiff further argues that the ALJ's appointment violates the Appointments Clause. In particular, Plaintiff argues the unconstitutional removal provision prevented then-Acting Director Berryhill from ratifying the appointment of the ALJ in this case. For the reasons already explained, the "the unlawfulness of the removal provision does not strip the Director of the power to undertake the other responsibilities of his office."

---

[2] Defendant also argues Mr. Edwards is not entitled to a new hearing for various other reasons including harmless error, the de facto officer doctrine, the rule of necessity, and prudential considerations, which the Court need not consider in light of finding Mr. Edwards failed to demonstrate any harm or a nexus between the removal restriction and his alleged injury.

*Collins*, 141 S. Ct. at 1788 n.23. One of those responsibilities is ratifying the appointments of ALJs. Accordingly, as then-Acting Director Berryhill was properly appointed herself, the unconstitutional removal provision does not prevent her from carrying out her responsibilities.

While not addressed in its original motion, Plaintiff also argues, for the first time in his reply brief, that then-Acting Director Berryhill was not properly appointed, in light of the Federal Vacancies Reform Act, at the time she ratified the appointment of the ALJ in this case. This is untimely as Plaintiff was not prevented from raising this argument in its original motion. Regardless, then-Acting Director Berryhill was properly appointed at the time she ratified the ALJ's appointment. *Chuenanan v. Comm'r of Soc. Sec.*, No. 1:21-CV-00086-RJC, 2022 WL 1416421, at n.1 (W.D.N.C. May 4, 2022).

Plaintiff argues that Acting Director Berryhill ratified the appointment of the ALJ in this case without proper authority as it was after the 210-day limit established by Congress under 5 U.S.C. § 3346. "Under the Federal Vacancies Reform Act (FRVA), 5 U.S.C. § 3346(a)(1), even if Ms. Berryhill's initial eligibility to serve as Acting Commissioner previously expired, then-President Trump nominated Andrew Saul for Commissioner in April 2018, such that Ms. Berryhill once again was eligible to serve as Acting Commissioner. The FVRA incorporates a spring-back provision, which permits the acting officer to begin performing the functions and duties of the vacant office again upon the submissions of a nomination, even if the 210-day period expired before that nomination was submitted." *Hutchens v. Kijakazi*, No. 1:20-CV-1124, 2021 WL 5834409, at *7 (M.D.N.C. Dec. 9, 2021). Here, Acting Director Berryhill ratified the appointment of the ALJ in this case on July 16, 2018, after President Trump nominated Mr. Saul for the position. This triggered the spring-back provision, and Acting Director Berryhill was properly serving at the time she ratified the ALJ's appointment.

### B. Accommodation for Elevating Leg

Plaintiff argues the ALJ failed to address his need to elevate his leg which prevents this Court from conducting meaningful review. In response, Defendant contends the ALJ did address Plaintiff's need to elevate his leg, ultimately finding that an accommodation was not warranted as Plaintiff's leg had sufficiently healed. After reviewing the evidence, meaningful review is possible as the ALJ sufficiently addressed his decision not to include a limitation for leg elevation.

An ALJ must "build an accurate and logical bridge from the evidence to his conclusion" when assessing a claimant's RFC. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (citing *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). If the ALJ does not indicate how the facts he cited disproves a claimant's need for an accommodation, review of his decision is impossible and remand is needed. *Id.*; *see also Torres v. Colvin*, 2016 WL 54933, at *7 (W.D.N.C. Jan. 5, 2016) (internal citations and quotations omitted).

Here, the ALJ noted that in September 2018 Mr. Edwards was involved in a motor vehicle accident and suffered severe injuries, including multiple fractures to his ribs, left hip, and left knee. (Tr. 20). Mr. Edwards testified that he was in a coma for 28 days, on a ventilator for 9 days, and in the hospital a total of 35 days. (*Id.*). In March 2019, six months after the accident, a physical exam showed Mr. Edwards did not use any ambulatory assistive devices and that he could walk on a flat surface for an hour and stand for an hour. (*Id.*). Another exam, from April 2019, was normal and showed that Mr. Edwards was healing. (*Id.*). Then, in May 2019, Mr. Edwards dropped a knife on his right foot while cooking. (*Id.* at 21). A medical exam from an ER visit showed no evidence of bony injury to the foot and that Mr. Edwards was only limited in flexing the big toe. Roughly six weeks later, an MRI showed a nearly complete tear of a tendon in Mr. Edwards' right foot from the knife injury. (*Id.*). Mr. Edwards elected conservative treatment.

(*Id.*). In a follow-up appointment with a podiatrist in August 2019, the doctor noted that Mr. Edwards had not been consistently wearing the boot but, nonetheless, found that Mr. Edwards demonstrated good range of motion and strength in his right foot. (*Id.*). Another exam in February 2020 found that Mr. Edwards could walk over 150 feet without rest and recommended periodic walking for Mr. Edwards. (*Id.* at 22). Two months later, in April 2020, an exam showed that Mr. Edwards' gait and coordination were normal, and he had no strength or muscle deficits.

Despite the record evidence that Mr. Edwards was healing from his injuries, at the hearing before the ALJ in December 2020—over two years after the car accident and over a year and a half after the knife accident—Mr. Edwards testified that he needed to elevate his leg three to eight hours a day. (*Id.* at 20). The ALJ included this testimony in his opinion. However, the ALJ did not include an accommodation for Mr. Edwards to elevate his leg, explaining that Mr. Edwards' statements about the limiting effects of his injuries were not consistent with the entirety of the record evidence.

> The record shows that in September 2018, the claimant sustained severe injuries in a motor vehicle accident, yet physical examinations after a period of recovery were absent evidence of significant residual limitations. More specifically, the claimant did not demonstrate significant range of motion restrictions, decreased sensation, extremity weakness, or gait abnormalities, and the claimant does not require an assistive device for ambulation. The claimant appears to have healed from the tendon laceration of the right foot, with conservative intervention, and he has not required additional physical therapy or the services of a pain clinic . . . The undersigned finds a lack of evidence to show that the claimant's physical impairments preclude all work, and concludes that the established residual functional capacity fully accommodates the claimant's impairments . . . There was no consistent evidence of ambulation difficulties, incoordination, or weakness, and the claimant did not routinely report problems sitting.

(*Id.* at 23). Accordingly, the ALJ explained Mr. Edwards' history, noted his testimony about elevating his leg, and explained that he did not include any additional limitations regarding Mr. Edwards' lower extremities because the record evidence showed Mr. Edwards had sufficiently

9
Case 1:21-cv-00134-RJC   Document 21   Filed 08/12/22   Page 9 of 11

recovered from his injuries.  The ALJ thus built "an accurate and logical bridge from the evidence to his conclusion" when assessing Mr. Edwards' RFC.  *Monroe*, 826 F.3d at 189.

Plaintiff takes issue that the ALJ's opinion failed to include information from doctor's visits in May and July 2019 that recommended Mr. Edwards elevate his right foot.  However, these visits occurred within weeks of Mr. Edwards dropping the knife on his right foot and a doctor's recommendation of elevation immediately after an injury is expected.  Tellingly, Plaintiff does not explain how the ALJ erred in concluding, based on record evidence, that a year and a half after these visits Mr. Edwards did not need to elevate his foot three to eight hours a day because he had healed.

Moreover, the cases cited by Plaintiff to support his position are inapposite with the present case.  For example, in *Hunter-Tedder* the case was remanded when the ALJ failed to explain why no limitation for elevating the legs was included in the RFC.  *Hunter-Tedder v. Berryhill*, No. 5:17-cv-53-MOC, 2017 WL 5759941, at *3 (W.D.N.C. Nov. 28, 2017).  Similarly, in *Hall* the case was remanded when the ALJ failed to discuss why a limitation for above-waist elevation was not necessary, failed to explain why plaintiff's testimony was not credible, and failed to support his conclusion with medical evidence.  *Hall v. Berryhill*, No. 3:17-CV-00285-MOC, 2018 WL 1463702, at *3 (W.D.N.C. Mar. 23, 2018).  Unlike *Hunter-Tedder* and *Hall*, the ALJ in this case noted Mr. Edward's testimony that he required three to eight hours of leg elevation daily, described the medical evidence showing that Mr. Edwards had healed in the two years since his injuries, and explained his conclusion that additional limitations for Mr. Edwards' lower extremities were unwarranted in light of his recovery.  Accordingly, there was no error as the ALJ discussed the need for leg elevation and explained that it was unnecessary based on the entirety of the record.

Nonetheless, even if there was an error regarding the ALJ's analysis of Mr. Edwards'

alleged need to elevate his leg, such error was harmless as the medical evidence shows that after two years Mr. Edwards' was sufficiently recovered. *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009); *Garner v. Astrue*, 436 Fed. Appx. 224, 226 (4th Cir. 2011) (applying the Sanders harmless-error standard in a Social Security-disability case); *Smith v. Colvin*, No. 1:12-CV-00285-MOC, 2014 WL 1203282, at *7 (W.D.N.C. Mar. 24, 2014) (explaining that error was harmless where "remand would not lead to a different result").

### IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Motion for Summary Judgment, (DE 12), is **DENIED**;

2. Defendant's Motion for Summary Judgment, (DE 15), is **GRANTED**; and

3. Defendant's decision to deny Plaintiff Social Security benefits is **AFFIRMED**.

The Clerk is directed to close this case.

**SO ORDERED.**

Signed: August 12, 2022

Robert J. Conrad, Jr.
United States District Judge